UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FRANCISCO E. PAULINO,<br><br>Defendant | Criminal No. 26cr10231<br><br>Violations:<br><br>Counts One - Eight: Wire Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1343, 2)<br><br>Counts Nine - Eleven: Unlawful Monetary Transactions<br>(18 U.S.C. § 1957)<br><br>Wire Fraud Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INDICTMENT

At all times relevant to this Indictment:

General Allegations

1. Defendant Francisco E. PAULINO was a resident of Lawrence and Methuen, Massachusetts.

2. PAULINO owned and operated Madison Tax, LLC ("Madison Tax"), a company offering tax preparation and business planning services in Lawrence, Massachusetts.

3. PAULINO owned and operated Madison Mortgage, Inc. ("Madison Mortgage"), a mortgage brokerage business in Lawrence, Massachusetts.

4. The Massachusetts Department of Unemployment Assistance ("DUA") was a state agency located in Boston, Massachusetts that administers unemployment benefits programs in the Commonwealth of Massachusetts.

5. The United States Small Business Administration (the "SBA") was an agency of the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. Among other things, the SBA was authorized to make loans to eligible small businesses located in a disaster area that suffered substantial economic injury as a result of the disaster. These were called Economic Injury Disaster Loans ("EIDLs").

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

7. The CARES Act created a new temporary federal unemployment insurance program called pandemic unemployment assistance ("PUA"). The PUA program provided unemployment benefits for individuals who were not eligible for regular unemployment benefits, including independent contractors.

8. In addition, the CARES Act and subsequent legislation allocated billions of dollars in EIDL funding and authorized the SBA to provide EIDLs to eligible small businesses experiencing substantial financial disruptions due to the COVID-19 pandemic.

**Scheme to Defraud**

9. Beginning in or around April 2020, and continuing until at least in or around December 2021, in the District of Massachusetts and elsewhere, PAULINO devised and executed a scheme to fraudulently obtain pandemic-related relief funds—including PUA and EIDL funds—in order to unlawfully enrich himself by, among other things, using the personal identifying information of other individuals, using Madison Tax as a device of his scheme to defraud, and using intermediaries to funnel pandemic-related relief funds to his own personal and business bank accounts.

*The Fraudulent PUA Claim*

10. The DUA administered and managed the PUA program in Massachusetts. The United States Treasury transmitted CARES Act program monies to a People's United Bank account in Connecticut held in the name of the DUA. Then the PUA benefits were transmitted electronically from Connecticut to the claimant's designated bank account or the bank account for a Bank of America prepaid debit card.

11. To receive PUA benefits, Massachusetts claimants were required to, among other things: (i) create an online account to submit the application (also known as PUA registration); (ii) provide eligibility criteria; (iii) provide the reason for their unemployed status (*e.g.*, how COVID-19 affected their employment); and (iv) certify that all the statements in the application were true. PUA claims submitted online to the DUA were processed via a server in Colorado.

12. To continue to receive weekly PUA benefits, claimants were required to submit weekly certifications online to the DUA confirming that they did not work, and did not receive any income, during the weekly reporting period. These weekly certifications were also processed through a server in Colorado. It was material to the DUA that it received truthful, complete, and

accurate information from applicants in the PUA registration, weekly certification, employment substantiation, and eligibility verification process, so that PUA funds were disbursed to qualified and eligible recipients.

13. On or about April 23, 2020, PAULINO caused an online application to be submitted for PUA benefits (the PUA Registration) in the name of PAULINO's relative, who was approximately 77 years of age at the time (the "Relative"), without the Relative's knowledge. Certifying that the statements contained in the PUA Registration were truthful and accurate, and acknowledging that the statements were made under the penalty of perjury and that he could be subject to criminal prosecution, PAULINO made the following false statements on the PUA Registration: (i) PAULINO checked the box stating that the Relative was "self employed, an independent contractor, or a gig worker and COVID-19 has severely limited my ability to perform my normal work," (ii) PAULINO stated that the Relative worked in Massachusetts in 2019, and (iii) PAULINO stated that the Relative's total income for 2019 was $4,650.

14. The PUA Registration that PAULINO filed in the Relative's name asked that the Relative's PUA benefits be deposited electronically into Citizens Bank checking account no. -3102, held solely in PAULINO's name.

15. The DUA approved the PUA claim which PAULINO submitted in the Relative's name, based in part on the false statements PAULINO made in the PUA Registration, and began making PUA payments to the Relative by making electronic deposits into PAULINO's Citizens Bank checking account no. -3102 in April 2020.

16. Between on or about April 23, 2020, and on or about September 9, 2021, PAULINO electronically filed Weekly Certifications with the DUA in connection with the claim he filed in the

Relative's name. In each Weekly Certification, PAULINO acknowledged, among other things, that "Claiming unemployment benefits for someone else is against the law."

17. In or around March 2021, the DUA requested employment substantiation for 2019, in order to determine the Relative's eligibility to receive PUA. On or about June 17, 2021, PAULINO submitted a false Employment Substantiation in the Relative's name, certifying that the Relative was self-employed in 2019 when in fact the Relative did not work in 2019 and had no income in 2019. In support of the PUA claim, PAULINO also uploaded fabricated Internal Revenue Service ("IRS") documents for 2019 in the name of the Relative, including false IRS Form 1040 Schedules 1 and 2; a false IRS Schedule C showing $12,500 in business income; a false IRS Schedule SE (Self-Employment Tax); and a false IRS Form 1099 purporting to reflect $12,500 in nonemployee compensation paid to the Relative by Madison Tax.

18. Based on the Employment Substantiation and false IRS documentation PAULINO provided for the Relative in June 2021, the DUA determined that the Relative was qualified to receive PUA, that the Relative had not been overpaid PUA, and that the Relative was not required to repay any PUA the Relative had previously received.

19. Based upon the PUA Registration and Weekly Certifications that PAULINO filed in the name of the Relative, the DUA paid PUA benefits totaling $44,160. Approximately $39,330 of the PUA benefit payments were sent via direct deposit to PAULINO's Citizens Bank account no. -3102.[1] PAULINO used the fraudulently obtained PUA proceeds to fund, among other things, personal expenses such as real estate expenses, loan payments, and transfers to

[1] Taxes were withheld from some of the PUA payments.

PAULINO's campaign account.[2]

20. PAULINO knew that the PUA Registration, Employment Substantiation, IRS documentation and Weekly Certifications he filed in the Relative's name were false because PAULINO knew the Relative did not work for and was not paid by Madison Tax in 2019.

*The Fraudulent EIDL Application and Modifications*

21. CARES Act EIDLs had terms that were attractive to many small businesses, including a low interest rate (3.75%), a long repayment period (30 years), and a deferred first repayment date (usually twelve months after the date a borrower received their loan proceeds).

22. The maximum amount of a CARES Act EIDL was initially $150,000. In or about the week of April 6, 2021, the SBA increased the maximum to $500,000. On or about October 8, 2021, the SBA increased the maximum to $2,000,000.

23. A small business applying for a CARES Act EIDL was required to complete a loan application that requested information including, among other things, business name, owner name, number of employees, gross revenues and cost of goods sold for the 12-month period ending January 31, 2020. The applicant did not request a specific loan amount; the SBA determined the amount based on the gross revenues and cost of goods sold identified on the application. The applicant signed the application with a digital signature and submitted it through the SBA's online portal.

24. The application required the applicant to certify that all information on their application, and any information submitted with their application, was "true and correct to the

---

[2] PAULINO ran for a seat in the Massachusetts House of Representatives, 16th Essex District, winning the election held in November 2021.

best of [their] knowledge," and that they would "submit truthful information in the future." The borrower's certification was material to the SBA's decision whether to approve the loan.

25. The SBA received EIDL applications and related documents electronically. All EIDL applications and related documents submitted before July 11, 2020, traveled through a server located in either Virginia, Iowa, or Washington state. All EIDL applications and related documents submitted on or after July 11, 2020, traveled through a server located in Iowa.

26. If the SBA approved the EIDL loan, it sent the borrower three documents electronically. The borrower had to sign these documents electronically and submit them to the SBA before the SBA disbursed any EIDL funds. The documents were:

a. a Loan Authorization and Agreement (the "LA&A"), which described the terms and conditions of the loan;

b. a promissory note (the "Note"), which stated the loan amount, the interest rate, and the repayment schedule; and

c. a Security Agreement, which gave the SBA a security interest in the borrower's property in case the borrower defaulted on the loan.

27. In the LA&A, the borrower certified that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan." This certification was material to the SBA's decision whether to disburse the loan proceeds.

28. Upon receipt of a signed LA&A, Note, and Security Agreement, the SBA caused EIDL proceeds to be electronically deposited into the borrower's bank account.

29. After a borrower received their loan proceeds, they could ask the SBA for one or more loan modifications for additional funds. The borrower did not need to complete another

application; the SBA relied on the borrower's initial application, including the certification contained therein, when determining whether to approve the borrower's request for additional funds.

30. If the SBA approved the loan modification, the borrower was required to electronically sign an amended LA&A, modified Note, and amended Security Agreement. In each amended LA&A, the borrower again certified that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan." This certification in each amended LA&A was material to the SBA's decision whether to disburse the additional EIDL funds.

31. A business receiving EIDL funds could only use the funds to alleviate specific economic injury from the COVID-19 pandemic. Specifically, borrowers could only use EIDL funds for working capital necessary to carry the small business until resumption of normal operations and for expenditures necessary to alleviate the specific economic injury, and could not use EIDL funds for expansion of facilities or acquisition of fixed assets.

32. Before the SBA disbursed EIDL funds, borrowers were required to certify that the funds would be used only for working capital to alleviate economic injury caused by the COVID-19 pandemic. For example:

a. by signing the LA&A and any Amended LA&A, the borrower certified: "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by [the] disaster occurring in the month of January 31, 2020 and continuing thereafter . . . ."

b. by signing the Security Agreement and any Amended Security Agreement, the borrower certified: "Borrower certifies that . . . none of the [loan

proceeds] are or will be primarily for personal, family or household purposes . . . ."

As set forth above, the borrower had to sign the LA&A and the Security Agreement, and any Amended LA&A and Amended Security Agreement, electronically and submit them to the SBA before the SBA would disburse any EIDL funds.

a. *PAULINO's Fraudulent EIDL Application for Jackson Enterprise*

33. On or about November 25, 2019, PAULINO incorporated Jackson Enterprise, Inc. ("Jackson Enterprise") as a "fast food restaurant cafe" business located in Lawrence, Massachusetts.

34. Jackson Enterprise opened a Heav'nly Donuts shop in Lawrence in August 2020. Jackson Enterprise had no revenues prior to August 2020.

35. In or around April 2020, PAULINO electronically signed and caused to be submitted to the IRS a federal tax return, prepared by Madison Tax, for Jackson Enterprise stating that its gross receipts or sales in 2019 were $0.

36. In or around May 2021, PAULINO electronically signed and caused to be submitted to the IRS a federal tax return, prepared by Madison Tax, for Jackson Enterprise stating that its gross receipts or sales in 2020 were $116,925.

37. On or about June 20, 2020, PAULINO electronically submitted an EIDL application, in which he falsely represented that Jackson Enterprise's gross revenues for the twelve months ending January 31, 2020, were $426,755. On the EIDL application, PAULINO indicated that an employee of Madison Tax had assisted in completing the application.

38. The SBA approved PAULINO's application. The false revenue amount reported by PAULINO on the Jackson Enterprise application was material to the SBA's decision to

extend an EIDL in the amount of $136,700.

39. On or about July 16, 2020, PAULINO electronically signed and submitted an LA&A, Note, and Security Agreement for an EIDL to Jackson Enterprise in the amount of $136,700.

40. On or about July 20, 2020:

a. approximately $136,600 in EIDL funds were electronically deposited into Jackson Enterprise's operating account at Citizens Bank, no. -7389; and

b. PAULINO then transferred all of the EIDL funds from Jackson Enterprise's operating account at Citizens Bank, no. -7389, to Jackson Enterprise's payroll account at Citizens Bank, no. -7397.

41. In or around December 2020, PAULINO transferred approximately $18,000 of the EIDL funds from Jackson Enterprise's payroll account at Citizens Bank, no. -7397, to Madison Tax's business checking account at Citizens Bank, no. -5593. Those funds were then applied to the purchase of real property in Lawrence, Massachusetts.

*b. PAULINO's Fraudulent EIDL Modification for Madison Tax*

42. On or about March 31, 2020, PAULINO electronically submitted an EIDL application for Madison Tax.

43. On or about May 13, 2020,[3] PAULINO sent an email to the SBA regarding the Madison Tax EIDL application which read as follows:

[3] PAULINO sent an identical email to the SBA the day prior, May 12, 2020.

**From:** Francisco Paulino [redacted]
**Sent:** Wednesday, May 13, 2020 5:45 PM
**To:** cls@sba.gov
**Subject:** APPLICATION NUMBER: 3300551408

Good Morning,
I am Francisco Paulino President of Madison Tax, LLC from Lawrence Massachusetts. I applied for EIDL early on April and I know my application had been overlooked. I had helped some of my client to get theirs application completed days after my was submitted and they had been funded already. Please assign my application to a loan officer and give access to the portal. I am desperate. As a accounting office we serve the community of Lawrence one the poorest city in the country. We need your help.

44. The SBA approved PAULINO's application. On or about May 17, 2020, PAULINO electronically signed and submitted an LA&A, Note, and Security Agreement for an EIDL to Madison Tax in the amount of $109,300.

45. On or about May 19, 2020, approximately $109,200[4] in EIDL funds were electronically deposited into Madison Tax's business checking account at Citizens Bank, no. -5593.

46. On or about April 15 and 24, 2021, PAULINO asked the SBA for an increase to the Madison Tax EIDL.

47. On or about July 12, 2021, the SBA approved a modification to Madison Tax's EIDL in the amount of $292,600, bringing the total loan amount to $401,800.

48. On or about July 12, 2021, PAULINO electronically signed and submitted to the SBA an Amended LA&A, 1st Modification of Note, and Amended Security Agreement for an EIDL to Madison Tax in the amount of $401,800. When he signed the documents on or about July 12, 2021, PAULINO falsely certified:

---

[4] In some cases, the SBA deducted $100 from the loan amount as a processing fee.

a. in the Amended LA&A, "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by [the] disaster occurring in the month of January 31, 2020 and continuing thereafter . . . ."; and

b. in the Amended Security Agreement, "that . . . none of the [loan proceeds] are or will be primarily for personal, family or household purposes . . . ."

In truth, PAULINO did not intend to use the Madison Tax EIDL funds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic.

49. On or about July 16, 2021, approximately $292,500 in EIDL proceeds were electronically deposited into Madison Tax's business checking account at Citizens Bank, no. -5593.

50. On or about October 29, 2021, PAULINO transferred approximately $100,000 of the EIDL funds from the Madison Tax business checking account at Citizens Bank, no. -5593 to a Madison Mortgage business checking account at Citizens Bank, no. -7796. PAULINO then caused approximately $600,000 ($100,000 of which was traceable to Madison Tax EIDL funds) to be wired from the Madison Mortgage business checking account at Citizens Bank, no. -7796 to the account of a closing attorney to fund a $600,000 mortgage from Madison Mortgage to two individuals for the purchase of real property in Methuen, Massachusetts. The interest rate on the mortgage was 5.5%, and PAULINO charged the two individuals a $15,750 "Loan Origination Fee."

51. On or about December 2, 2021, PAULINO transferred approximately $120,000 of the EIDL funds from the Madison Tax business checking account at Citizens Bank, no. -5593 to a Madison Mortgage business checking account at Citizens Bank, no. -7796. PAULINO then

caused approximately $460,000 ($120,000 of which was traceable to Madison Tax EIDL funds) to be wired from the Madison Mortgage business checking account at Citizens Bank, no. -7796 to the account of a closing attorney, to fund a $460,000 mortgage from Madison Mortgage to a limited liability company for the purchase of real property in Lawrence, Massachusetts. The interest rate on the mortgage was 7.94%, and PAULINO charged the limited liability company a $9,200 "Loan Origination Fee."

c. *PAULINO's Fraudulent EIDL Modification for Client 1*

52. Several Madison Tax clients owned small businesses in and around Lawrence. These clients were originally from the Dominican Republic or Guatemala and spoke limited English. PAULINO was fluent in Spanish and English. PAULINO also had a law degree and a Master of Laws degree in taxation, both from a law school in Boston.

53. Several of PAULINO's clients hired him to perform bookkeeping and tax services for their small businesses. Some of these clients gave PAULINO their social security numbers, dates of birth, email addresses, and other identifying information. Some of these clients also gave PAULINO their usernames and passwords for online access to their bank accounts.

54. PAULINO encouraged Madison Tax clients to file applications for EIDL funding, including modifications of funded loans. PAULINO completed at least some of his clients' EIDL applications; communicated with the SBA regarding his clients' EIDL applications; signed his clients' names to their LA&As, Notes and Security Agreements without translating the documents into their native language or explaining the terms of the documents to them; and directed his clients regarding the use of their EIDL funds.

55. Client 1 was a Lawrence, Massachusetts resident originally from the Dominican Republic. Client 1 had a sixth-grade education, did not read English, and spoke very little

English. Client 1 knew PAULINO for years, considered him a friend, and trusted him.

56. In or about 2015, Client 1 started a small coin-operated laundry business in Lawrence ("Client 1 Business") and hired PAULINO to handle all accounting and tax matters for the business.

57. Client 1 gave PAULINO their Social Security number, date of birth, phone number, email address, and other personal identifying information. Client 1 also gave PAULINO the username and password for Client 1 Business's accounts at Citizens Bank, nos. -1841 (checking) and -0157 (savings), so that PAULINO could conduct online banking, which Client 1 did not know how to use, for Client 1 Business.

58. In or about June 2020, PAULINO told Client 1 that the government was lending money to small businesses because of the COVID-19 pandemic, and recommended that Client 1 apply. PAULINO told Client 1 that the interest rate for the loans was 0.1%, and that Client 1 could use the loan proceeds for anything they wanted, both of which PAULINO knew were false. PAULINO said he would handle all the paperwork and Client 1 would not need to do anything. Client 1 agreed.

59. On or about June 17, 2020, PAULINO submitted an EIDL application for Client 1 Business using the SBA's online portal. The application identified PAULINO and Madison Tax as the Agent assisting Client 1 with the application, but PAULINO did not show the application to Client 1.

60. Although PAULINO knew Client 1's personal email address, he did not put it on the application. Instead, he used an email address to which he had access and which he knew Client 1 never used.

61. On or about June 20, 2020, the SBA approved an EIDL for Client 1 Business in

an amount of approximately $104,300. PAULINO signed the LA&A, Note, and Security Agreement using Client 1's digital signature and returned them to the SBA electronically. He did not show or tell Client 1 about these documents.

62. On or about June 23, 2020, approximately $104,200 in EIDL proceeds was electronically deposited into Client 1 Business's checking account at Citizens Bank, no. -1841.

63. On or before September 4, 2021, without Client 1's knowledge, PAULINO asked the SBA for a modification to Client 1 Business's EIDL.

64. On or about September 6, 2021, the SBA approved a modification to Client 1 Business's EIDL in the amount of $243,200, bringing the total loan amount to $347,500.

65. On or about September 6, 2021, PAULINO electronically affixed Client 1's digital signature and submitted to the SBA an Amended LA&A, 1st Modification of Note, and Amended Security Agreement for an EIDL to Client 1 Business in the amount of $347,500. When he signed the documents for Client 1 on or about September 6, 2021, PAULINO falsely certified:

a. in the Amended LA&A, "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by [the] disaster occurring in the month of January 31, 2020 and continuing thereafter . . . ."; and

b. in the Amended Security Agreement, "that . . . none of the [loan proceeds] are or will be primarily for personal, family or household purposes . . . ."

In truth, PAULINO did not intend for Client 1 to use Client 1 Business's EIDL funds solely as working capital to alleviate economic injury caused by the COVID-19 pandemic.

66. On or about September 13, 2021, approximately $243,200 in EIDL proceeds was

electronically deposited into Client 1 Business's checking account at Citizens Bank, no. -1841.

67. On or about September 13, 2021, PAULINO used Client 1's online-banking username and password to access Client 1 Business's checking account at Citizens Bank, no. -1841, and transferred approximately $7,798.47 to the Madison Tax checking account at Citizens Bank, no. -5593, without Client 1's knowledge or permission.

68. On or about September 13, 2021, PAULINO told Client 1 that he had obtained more government loan money for Client 1 Business, and that the funds had been deposited into Client 1 Business's checking account at Citizens Bank, no. -1841. PAULINO told Client 1 to leave the money in the account. He said he was going to "propose a business deal for" Client 1, or words along those lines.

69. On or about September 14, 2021, PAULINO arranged for approximately $227,000 of the new EIDL money to be transferred from Client 1 Business's checking account, no. -1841, to its savings account, no. -0157, at Citizens Bank.

70. Between approximately September 14, 2021 and December 3, 2021, PAULINO told Client 1 that he wanted Client 1 to lend him $200,000.

71. On or about December 3, 2021, Client 1 and PAULINO went to a Citizens Bank branch, where they transferred $200,000 from Client 1 Business's savings account, no. -0157, to PAULINO's Madison Tax checking account, no. -5593.

72. On or about December 6, 2021, PAULINO used the $200,000 from Client 1 Business's EIDL to partially fund a $680,000 mortgage from Madison Mortgage to an individual for the purchase of real property in Lawrence, Massachusetts. The interest rate on the mortgage was 6.25%, and PAULINO charged the individual a $17,000 "Loan Origination Fee."

## COUNTS ONE – EIGHT
Wire Fraud; Aiding and Abetting
(18 U.S.C. §§ 1343, 2)

The Grand Jury charges:

73. The Grand Jury re-alleges and incorporates by reference paragraphs 1-72 of this Indictment.

74. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

FRANCISCO E. PAULINO,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | June 20, 2020 | Electronic submission of EIDL application for Jackson Enterprise to SBA |
| 2 | July 20, 2020 | SBA electronic transfer of $136,600 to Jackson Enterprise's operating account at Citizens Bank, no. -7389 |
| 3 | July 12, 2021 | Electronic submission of Amended LA&A for Madison Tax to SBA |
| 4 | July 16, 2021 | SBA electronic transfer of $292,500 to Madison Tax's checking account at Citizens Bank, no. -5593 |
| 5 | September 6, 2021 | Electronic submission of Amended LA&A for Client 1 Business to SBA |
| 6 | September 9, 2021 | Electronic submission of Weekly Certification for Week Ending September 4, 2021, submitted to DUA |

| Count | Approximate Date | Description |
|---|---|---|
| 7 | September 13, 2021 | DUA electronic transfer of $482 to PAULINO's Citizens Bank checking account, no. -3102 |
| 8 | September 13, 2021 | $243,200 SBA funds transfer to Client 1 Business Citizens Bank checking account, no. -1841 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS NINE – ELEVEN
Unlawful Monetary Transactions
(18 U.S.C. § 1957)

The Grand Jury charges:

75. The Grand Jury re-alleges and incorporates by reference paragraphs 1-72 of this Indictment.

76. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

FRANCISCO E. PAULINO,

knowingly engaged and attempted to engage in the following monetary transactions by, through, and to a financial institution affecting interstate commerce, that is, Citizens Bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, in criminally derived property of a value greater than $10,000, which monetary transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Approximate Date | Description |
|---|---|---|
| 9 | October 29, 2021 | Transfer of $100,000 from Madison Tax's business checking account at Citizens Bank, no. -5593, to Madison Mortgage's business checking account at Citizens Bank, no. -7796 |
| 10 | December 2, 2021 | Transfer of $120,000 from Madison Tax's business checking account at Citizens Bank, no. -5593, to Madison Mortgage's business checking account at Citizens Bank, no. -7796 |
| 11 | December 3, 2021 | Transfer of $200,000 from Client 1 Business's savings account at Citizens Bank, no. -0157, to Madison Tax's checking account at Citizens Bank, no. -5593 |

All in violation of Title 18, United States Code, Section 1957.

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

1. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Eight, the defendant,

FRANCISCO E. PAULINO,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph One above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

1. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts Nine through Eleven, the defendant,

FRANCISCO E. PAULINO,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

[redacted]

FOREPERSON

KRISTINA E. BARCLAY
CHRISTINE WICHERS
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: August 25, 2026
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK